UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK

_____

MARYANN MEADORS,

                     Plaintiff,

        V.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                    Defendant.

_____

**REPORT AND
RECOMMENDATION**

07-CV-623
(LEK/VEB)

## I. INTRODUCTION

In February of 2005, Plaintiff Mary Ann Meadors filed an application for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB") under the Social Security Act.  Plaintiff alleges that she has been unable to work since November 16, 2004, primarily due to bulging discs, disc protrusion, lumbosacral radiculopathy, spondylosis, myofascial pain, Chronic Obstructive Pulmonary Disease ("COPD"), Carpal Tunnel Syndrome, and various mental health issues.  Plaintiff's application for benefits was denied by the Commissioner of Social Security.

Plaintiff, through her attorneys, Howard Olinsky, Esq. and Jaya Shurtliff, Esq., of Olinsky and Shurtliff, LLP, commenced this action on June 12, 2007, by filing a Complaint in the United States District Court for the Northern District of New York. (Docket No. 1). Plaintiff seeks judicial review of the Commissioner's denial of DIB and SSI benefits pursuant to 42 U.S.C. §§ 405 (g) and 1383 (c)(3).

On March 19, 2009, the Honorable Norman A. Mordue, Chief United States District

Judge, referred this case to the undersigned for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(A) and (B). (Docket No. 17).

For the reasons set forth below, this Court finds no reversible error and finds that substantial evidence supports the ALJ's decision.  Thus, the Court recommends that the decision of the Commissioner be affirmed.

## II. BACKGROUND

The relevant procedural history may be summarized as follows:  Plaintiff applied for DIB and SSI benefits on February 2, 2005, alleging that she had been unable to work since November 16, 2004.  (T[1] at 46-50, 151).  The application was denied on June 27, 2005.  Plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  On September 26, 2006, Plaintiff appeared with counsel at a hearing in Syracuse, New York before ALJ Robert Gale.  (T at 221-42).

On September 28, 2006, the ALJ issued a written decision denying Plaintiff's application for benefits.  (T at 24-32).  ALJ Gale's decision became the Commissioner's final decision on May 25, 2007, when the Appeals Council denied Plaintiff's request for review.  (T at 3-5).

Plaintiff commenced this action on June 12, 2007. (Docket No. 1).  Plaintiff, through counsel, filed a supporting Brief on December 17, 2007. (Docket No. 12).   The Commissioner filed a Brief in opposition on March 3, 2008. (Docket No. 15).

Pursuant to General Order No. 18, issued by the Chief District Judge of the Northern

---

[1]Citations to "T" refer to the Administrative Transcript.  (Docket No.8).

District of New York on September 12, 2003, this Court will proceed as if both parties had accompanied their briefs with a motion for judgment on the pleadings.[2]


## III. DISCUSSION

### A.   Legal Standard

A court reviewing a denial of disability benefits may not determine *de novo* whether an individual is disabled. See 42 U.S.C. §§ 405(g), 1383(c)(3); Wagner v. Sec'y of Health & Human Servs., 906 F.2d 856, 860 (2d Cir.1990). Rather, the Commissioner's determination will only be reversed if the correct legal standards were not applied, or it was not supported by substantial evidence. Johnson v. Bowen, 817 F.2d 983, 986 (2d Cir.1987) ("Where there is a reasonable basis for doubt whether the ALJ applied correct legal principles, application of the substantial evidence standard to uphold a finding of no disability creates an unacceptable risk that a claimant will be deprived of the right to have her disability determination made according to the correct legal principles."); see Grey v. Heckler, 721 F.2d 41, 46 (2d Cir.1983); Marcus v. Califano, 615 F.2d 23, 27 (2d Cir.1979).

"Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). Where evidence is deemed susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. See Rutherford

---

[2]General Order No. 18 provides, in pertinent part, that "[t]he Magistrate Judge will treat the proceeding as if both parties had accompanied their briefs with a motion for judgment on the pleadings."

v. Schweiker, 685 F.2d 60, 62 (2d Cir.1982).

"To determine on appeal whether the ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams v. Bowen, 859 F.2d 255, 258 (2d Cir.1988).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." Rosado v. Sullivan, 805 F.Supp. 147, 153 (S.D.N.Y.1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." Valente v. Sec'y of Health & Human Servs., 733 F.2d 1037, 1041 (2d Cir.1984).

The Commissioner has established a five-step sequential evaluation process to determine whether an individual is disabled as defined under the Social Security Act. See 20 C.F.R. §§ 416.920, 404.1520. The United States Supreme Court recognized the validity of this analysis in Bowen v. Yuckert, 482 U.S. 137, 140-142, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987), and it remains the proper approach for analyzing whether a claimant is disabled.

This five-step process is detailed below:

First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.

If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work

activities.

> If the claimant has such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.

> If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.

> Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.

> Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir.1982) (per curiam); see also Rosa v. Callahan, 168 F.3d 72, 77 (2d Cir.1999); 20 C.F.R. §§ 416.920, 404.1520.

While the claimant has the burden of proof as to the first four steps, the Commissioner has the burden of proof on the fifth and final step. See Bowen, 482 U.S. at 146 n. 5; Ferraris v. Heckler, 728 F.2d 582 (2d Cir.1984).

The final step of the inquiry is, in turn, divided into two parts. First, the Commissioner must assess the claimant's job qualifications by considering his or her physical ability, age, education, and work experience. Second, the Commissioner must determine whether jobs exist in the national economy that a person having the claimant's qualifications could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. §§ 416.920(g); 404.1520(g); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 76 L.Ed.2d 66 (1983).

**B.      Analysis**

**1.      Commissioner's Decision**

The ALJ determined that Plaintiff met the insured status requirements of the Act and had not engaged in substantial gainful activity at any time relevant to the decision.  (T at 28).  Further, the ALJ found that Plaintiff has one impairment (low back pain with lumbar radiculopathy) considered "severe" under the applicable Social Security Act Regulations (the "Regulations").  (T at 28).  However, the ALJ determined that Plaintiff's medically determinable impairments did not meet or equal one of the impairments listed in Appendix I of the Regulations. (T at 29).

After reviewing the medical evidence, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of unskilled light work activity. (T at 32).  The ALJ found that Plaintiff can lift or carry twenty (20) pounds occasionally, ten (10) pounds frequently, can stand or walk about six (6) hours in an eight hour work day, and sit about six (6) hours in an eight hour work day, can push or pull twenty (20) pounds occasionally and ten (10) pounds frequently.  (T at 29). The ALJ also found that Plaintiff is unable to use her right lower extremity to operate foot pedals, but she can occasionally stoop, crouch, or crawl.  (T at 29).  The ALJ found that Plaintiff should avoid "environmental irritants, such as fumes, dusts, and gases."  (T at 29).

The ALJ found that Plaintiff is unable to perform her past relevant work as a stock clerk, pharmacy technician, or as a day laborer.  (T at 31).   However, the ALJ found that Plaintiff, based on her residual functional capacity, age, education, and work experience, can perform jobs that exist in significant numbers in the national economy.  (T at 31-32).

Accordingly, the ALJ concluded that Plaintiff is not under a "disability," as that term is defined under the Act, and denied the application for benefits. (T at 32).

As noted above, the ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review.  (T at 3-5).

### 2.      Plaintiff's Claims

Plaintiff contends that the Commissioner's decision should be reversed.  Plaintiff offers six (6) principal arguments in support of her position.  First, she argues that the ALJ erred by failing to find that her adjustment disorder, carpal tunnel, and cervical radiculopathy were not "severe." Second, Plaintiff asserts that the ALJ should have considered her claim under Listing 1.04.  Third, she contends that the ALJ failed to follow the treating physician rule.   Fourth, Plaintiff argues that the ALJ did not apply the appropriate standard when evaluating her credibility.  Fifth, she asserts that the ALJ should have consulted a vocational expert.  Sixth and finally, Plaintiff contends that the ALJ failed to demonstrate that jobs exist in significant numbers that Plaintiff can perform.  This Court will address each argument in turn.

### a.      Severity of Impairments

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a severe impairment that significantly limits his or her physical or mental ability to do basic work activities. See 20 C.F.R. §§ 404.1520(c), 416.920(c). The following are examples of "basic work activities": "walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling ... seeing, hearing, and speaking ... [u]nderstanding,

carrying out, and remembering simple instructions ... [u]se of judgment ... [r]esponding appropriately to supervision, co-workers and usual work situations." Gibbs v. Astrue, No. 07-Civ-10563, 2008 WL 2627714, at *16 (S.D.N.Y. July 2, 2008); 20 C.F.R. § 404.1521(b)(l)-(5).

The claimant bears the burden of presenting evidence establishing severity. Miller v. Comm'r of Social Sec., No. 05-CV-1371, 2008 WL 2783418, at *6-7 (N.D.N.Y. July 16, 2008); see also 20 C.F.R. § 404.1512(a). Although the Second Circuit has held that this step is limited to "screen[ing] out de minimis claims," Dixon v. Shalala, 54 F.3d 1019, 1030 (2d Cir.1995), the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman v. Shalala, 895 F.Supp. 50, 53 (S.D.N.Y.1995). Indeed, a "finding of 'not severe' should be made if the medical evidence establishes only a 'slight abnormality' which would have 'no more than a minimal effect on an individual's ability to work.'" Rosario v. Apfel, No. 97-CV-5759, 1999 WL 294727 at *5 (E.D.N.Y. March 19,1999) (quoting Bowen v. Yuckert, 482 U.S. 137, 154 n. 12 (1987)).

Plaintiff agrees with the ALJ's conclusion that her back impairment was severe, but contends that the ALJ erred by concluding that her mental impairment, carpal tunnel syndrome, and cervical radiculopathy were not severe impairments.

### i.    Severity of Mental Impairment

Plaintiff's mental status was evaluated on a consultative basis by Kristin Barry, PhD. (T at 170-74).  Dr. Barry diagnosed Plaintiff as suffering from "[a]djustment disorder with mixed anxiety and depressed mood."  (T at 173).  The ALJ noted Dr. Barry's diagnosis,and concluded that Plaintiff's mental impairment was not severe.  This Court finds that the ALJ's

8

decision in this regard was supported by substantial evidence.

When evaluating the severity of mental impairments, the regulations require application of a "special technique" at the second and third steps, in addition to the sequential analysis. Kohler v. Astrue, 546 F.3d 260, 265-66 (2d Cir.2008) ( citing 20 C.F.R. § 404.1520a). The technique first requires a determination of whether the Plaintiff has a medically determinable mental impairment. 20 C.F.R. § 404.1520a(b)(1). Then, the ALJ must rate the degree of Plaintiff's functional limitation resulting from the impairment in four areas: (1) activities of daily living; (2) social functioning; (3) concentration, persistence, or pace; and (4) episodes of decompensation. § 404.1520a(c)(3). A mental impairment is generally found not severe if the degree of limitation in the first three areas is mild or better and there are no episodes of decompensation. § 404.1520a(d)(1). The ALJ must document "a specific finding as to the degree of limitation in each of the functional areas." § 404.1520a(e)(2).

In the present case, the ALJ recognized his obligation to employ the special technique and specifically referenced the applicable standard. (T at 29). He then noted that Plaintiff does have a medically determinable mental impairment, *i.e.*, adjustment disorder with mixed anxiety and depressed mood. The ALJ then considered the degree of Plaintiff's functional limitations in the four pertinent areas. The ALJ noted that the adjustment disorder imposed "only mild limitations on [Plaintiff's] activities of daily living." (T at 29). This was consistent with Dr. Barry's report, which indicated that Plaintiff was able to perform basic activities of daily living. (T at 173). Concerning social functioning, the ALJ concluded that Plaintiff's limitations were likewise "mild." (T at 29). This was also supported by Dr. Barry's report, which described Plaintiff's family relationships as "fair to good." (T at

173).  With respect to concentration, persistence, and pace, the ALJ found that the mental impairment imposed only mild limitations, a finding supported by Dr. Barry's conclusion that Plaintiff "is able to follow and understand simple directions and instructions and . . . maintain her attention and concentration." (T at 173).  Plaintiff does not allege any episodes of decompensation or hospitalizations related to mental illness. (T at 170).

Further support for the ALJ's conclusion with regard to the severity of the mental impairment is found in two facts: first, Plaintiff never received any psychiatric counseling or  treatment (T at 266) and second, Dr. Barry noted that Plaintiff "may benefit from counseling supports," but did not recommend any specific treating or counseling or indicate that Plaintiff should be placed on any additional medication to treat her mental condition.[3] (T at 174).

Plaintiff notes that the non-examining State Agency physician, Dr. Apacible, opined that Plaintiff had "moderate" difficulties in maintaining concentration, persistence, and pace. (T at 195).  Further, Plaintiff's treating physician, Dr. Ahmed, prescribed Wellburtrin, Ambien, and Valium for Plaintiff's sleeping difficulties.  (T at 233, 235).  However, Dr. Apacible also concluded that Plaintiff only had "mild" restriction of activities of daily living and "mild" difficulties maintaining social functioning.  (T at 195).  It is the sole responsibility of the ALJ to weigh all medical evidence and resolve any material conflicts in the record.  See Richardson v. Perales, 402 U.S. 389, 399, 91 S.Ct. 1420, 1426, 28 L.Ed.2d 842 (1971).  For the foregoing reasons, this Court finds that the ALJ applied the appropriate

---

[3]At the time of the consultative examination by Dr. Barry, Plaintiff was taking Valium, Ambien, Combivent, and Flovent (the latter two of which are inhalers).  (T at 171).  Dr. Barry recommended the continued use of these medications to assist Plaintiff with sleeping problems, but did not indicate that any additional medication was necessary to treat her adjustment disorder.  (T at 173).

standard and reached a conclusion supported by substantial evidence.

### ii.    Severity of Other Physical Impairments

Consultative orthopedic examiner Dr. Myra Shayevitz opined that Plaintiff had "definite limitations" with regard to her ability to engage in heavy lifting or rapid neck movement. (T at 169). Results of a nerve conduction study conducted in June 2005 were consistent with carpal tunnel syndrome. (T at 149). The same study indicated evidence of multilevel neurotomal pathology in the cervical spine consistent with cervical radiculopathy.[4] (T at 148-49).

However, other than the above-referenced study, Plaintiff's medical records do not contain any further reference to carpal tunnel syndrome or cervical radiculopathy. Further, Dr. Shayevitz noted that Plaintiff's hand and finger dexterity were "intact" and indicated that there was only "some limitation of the neck." (T at 168-69).

As noted above, the "mere presence of a disease or impairment, or establishing that a person has been diagnosed or treated for a disease or impairment" is not, by itself, sufficient to render a condition "severe." Coleman, 895 F.Supp. at 53. The record in the present case is notably lacking in evidence beyond the diagnoses of carpal tunnel syndrome and cervical radiculopathy and there are only minimal indications of any assessment of the severity of those conditions.

Moreover, the ALJ found that these conditions caused some limitation and accounted for the impairments in his residual functional capacity finding. For example, the

---

[4]"Cervical radiculopathy" is defined as "a dysfunction of a nerve root of the cervical spine," which can cause pain, numbness, and weakness. See http://emedicine.medscape.com/article/94118-overview, (last accessed May 13, 2009).

ALJ noted that Plaintiff is unable to repetitively use her right lower extremity to operate foot pedals and can only occasionally stoop, crouch, crawl or move her neck rapidly. Accordingly, even assuming *arguendo* that the impairments should have been considered severe, any such error was harmless as the ALJ included the impairments in his consideration of Plaintiff's residual functional capacity.

### b. Determination Concerning the Listings

Plaintiff contends that her impairments meet or equal the spine disorder impairment identified in § 1.04A, 20 C.F.R. Part 404, Subpart P, Appendix 1 (commonly referred to as "the Listings").

If a claimant suffers from an impairment or combination of impairments that meets or medically equals one of the impairments contained in the Listings, the claimant will be considered disabled.

Listing 1.04A provides as follows:

Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:

    A.    Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); ....

20 C.F.R. Pt. 404, Subpt. P, App. 1.

In the present case, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings. The ALJ's decision in this regard is supported by substantial evidence. With regard to Listing 1.04A,

12

the medical evidence indicated only "small" and "minimal" degenerative changes of the lumbar spine and "no evidence of disc herniation or nerve root entrapment." (T at 150-51). Although Dr. Mahesh Kuthuru, Plaintiff's treating back specialist, noted muscle weakness and (T at 132), he recommended that Plaintiff pursue vocational training, clearly indicating a belief on his part that Plaintiff had the ability to perform work.  (T at 134).

Plaintiff also suggests that the ALJ erred by failing to provide a specific discussion of Listing 1.04 and his reasons for concluding that Plaintiff's impairments did not meet or medically equal that (or any other) Listing.  However, it is well-settled that the ALJ is not required to have mentioned "every item of testimony presented to him" or explain "why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability." Mongeur v. Heckler, 722 F.2d 1033, 1040 (2d Cir.1983); see also Rufino v. Apfel, 2 F.Supp.2d 479, 484 (S.D.N.Y.1998) (noting that ALJ need not "explicitly reconcile every conflicting shred of medical testimony"); Blowers v. Astrue, No. 05-CV-557, 2008 WL 398464, at *6 (N.D.N.Y. Feb. 12, 2008) ("When, as here, the evidence of record permits the Court to glean the rationale of an ALJ's decision, the Court will not require that he have mentioned every item of testimony presented to him or have explained why he considered particular evidence unpersuasive or insufficient to lead him to a conclusion of disability.").

The ALJ's decision contains ample citations to the medical record, which readily permits the Court to glean the rationale of the decision.  As discussed above, the Court finds that the ALJ's finding that Plaintiff did not have an impairment or combination of impairments that meets or medically equals any of the Listings was supported by substantial evidence.

### c.    Treating Physician Rule

Plaintiff also argues that the ALJ improperly discounted the opinion of her treating physician.  Under the "treating physician's rule," the ALJ must give controlling weight to the treating physician's opinion when the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the] record." 20 C.F.R. § 404.1527(d)(2); Halloran v. Barnhart, 362 F.3d 28, 31-32 (2d Cir. 2004); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir.2000).[5]

Even if a treating physician's opinion is deemed not to be deserving of controlling weight, an ALJ may nonetheless give it "extra weight" under certain circumstances.  In this regard, the ALJ should consider the following factors when determining the proper weight to afford the treating physician's opinion if it is not entitled to controlling weight: (1) length of the treatment relationship and the frequency of examination, (2) nature and extent of the treatment relationship, (3) supportability of opinion, (4) consistency, (5) specialization of the treating physician, and (6) other factors that are brought to the attention of the court. C.F.R. § 404.1527(d)(1)-(6); see also de Roman, 2003 WL 21511160, at *9; Shaw, 221 F.3d at 134; Clark v. Comm'r of Soc. Sec., 143 F.3d 115, 118 (2d Cir.1998).

In the present case, Plaintiff argues that the ALJ should have afforded controlling weight to the opinion of Dr. Mohamed Ahmed, who provided a medical source statement in which he stated that Plaintiff could sit, stand or walk for only two hours in an eight hour work day; sit for less than forty-five minutes at one time; stand for less than thirty minutes at a time; rarely lift less then ten pounds and never lift amounts greater than that;

---

[5]"The 'treating physician's rule' is a series of regulations set forth by the Commissioner in 20 C.F.R. § 404.1527 detailing the weight to be accorded a treating physician's opinion." de Roman v. Barnhart, No.03-Civ.0075, 2003 WL 21511160, at *9 (S.D.N.Y. July 2, 2003).

occasionally twist, climb ladders and stairs, but never stoop or crouch. (T at 252-56).

The ALJ afforded "little weight" to Dr. Ahmed's conclusions, noting that they were "not well supported by objective medical evidence."  (T at 30).  This Court finds that the ALJ's finding in this regard was supported by substantial evidence.  First, as discussed above, the clinical test results showed only mild degenerative changes and no evidence of disc herniation or nerve entrapment. (T at 150-51).  Dr. Ahmed is a primary care physician (not an orthopedic specialist) and his opinion is at least apparently contradicted by Plaintiff's treating back specialist (Dr. Kuthuru), who recommended that Plaintiff pursue vocational training.  (T at 134).  Dr. Shayevitz, the consultive orthopedic examiner, noted "definite" limitations with regard rapid neck movement, heavy lifting, and prolonged sitting, standing or walking, but did not indicate that Plaintiff was unable to perform work.  (T at 169).

Having reviewed the evidence at issue, the Court finds no reversible error in the ALJ's treatment of the opinions and work capacity assessments of Plaintiff's primary care physician. Rather, the ALJ's decision reflects his extensive evaluation of all the medical evidence in the record, which provided sufficient support for his conclusions regarding Plaintiff's residual functional capacity and his ultimate determination regarding the lack of a disability.

### d.   Evaluation of Plaintiff's Credibility

Courts in the Second Circuit have determined pain is an important element in DIB and SSI claims, and pain evidence must be thoroughly considered. See Ber v. Celebrezze, 333 F.2d 923 (2d Cir.1994). Further, if an ALJ rejects a claimant's testimony of pain and limitations, he or she must be explicit in the reasons for rejecting the testimony. See

Brandon v. Bowen, 666 F.Supp. 604, 609 (S.D.N.Y.1997).

However, subjective symptomatology by itself cannot be the basis for a finding of disability. A claimant must present medical evidence or findings that the existence of an underlying condition could reasonably be expected to produce the symptomatology alleged. See 42 U.S.C. §§ 423(d)(5)(A), 1382c (a)(3)(A); 20 C.F.R. §§ 404.1529(b), 416.929; SSR 96-7p; Gernavage v. Shalala, 882 F.Supp. 1413, 1419 (S.D.N.Y.1995).

"An administrative law judge may properly reject claims of severe, disabling pain after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence." Lewis v. Apfel, 62 F.Supp.2d 648, 651 (N.D.N.Y.1999) (internal citations omitted). To this end, the ALJ must follow a two-step process to evaluate the plaintiff's contention of pain, set forth in SSR 96-7p:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or medical impairment (s) ... that could reasonably be expected to produce the individual's pain or other symptoms ....

> Second, ... the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities ....

According to 20 C.F.R. §§ 404.1529(c)(3)(i)-(vii) and 416.929(c)(3)(i)-(vii), if the plaintiff's pain contentions are not supported by objective medical evidence, the ALJ must consider the following factors in order to make a determination regarding the plaintiff's credibility:

1.     [Plaintiff's] daily activities;
2.     The location, duration, frequency and intensity of [Plaintiff's] pain or other symptoms;

16

3.      Precipitating and aggravating factors;
4.      The type, dosage, effectiveness, and side effects of any medication [Plaintiff] take[s] or ha[s] taken to alleviate ... pain or other symptoms;
5.      Treatment, other than medication [Plaintiff] receive[s] or ha[s] received for relief of ... pain or other symptoms;
6.      Any measure [Plaintiff] use[s] or ha[s] used to relieve ... pain or other symptoms;
7.      Other factors concerning [Plaintiff's] functional limitations and restrictions due to pain or other symptoms.

If the ALJ finds that the plaintiff's pain contentions are not credible, he or she must state his reasons "explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief." Young v. Astrue, No. 7:05-CV-1027, 2008 WL 4518992, at *11 (N.D.N.Y. Sept. 30, 2008) (quoting Brandon v. Bowen, 666 F.Supp 604, 608 (S.D.N.Y.1987)).

In the present case, the ALJ concluded that Plaintiff's complaints of disabling pain were not fully credible. (T at 30). Plaintiff notes that the ALJ did not determine, as a threshold matter, whether her impairments could reasonably be expected to produce the pain and symptoms that she complained of.  Rather, the ALJ simply noted the factors to be considered when assessing the credibility of a claimant's allegations (e.g., daily activities, type, dosage, and effectiveness of medication) and then proceeded to analyze those factors. (T at 30-31).

Although Plaintiff is correct that the ALJ erred by failing to address the issue of whether her symptoms could reasonably be expected to produce the pain and symptoms that she complained of, the Court finds that the ALJ's overall credibility determination is nevertheless supported by substantial evidence.  The failure to address the initial inquiry set forth in SSR 96-7p does require a remand per se, but must be considered in view of the record as a whole.  See Comins v. Astrue, No. 05-CV-556, 2009 WL 819379, at *11

17

(N.D.N.Y. Mar. 26, 2009);

"It is the function of the [Commissioner], not [reviewing courts], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." Carroll v. Secretary of Health and Human Servs., 705 F.2d 638, 642 (2d Cir.1983) (citations omitted). If there is substantial evidence in the record to support the Commissioner's findings, "the court must uphold the ALJ's decision to discount a claimant's subjective complaints of pain." Aponte v. Sec'y, Dep't of Health & Human Servs., 728 F.2d 588, 591 (2d Cir.1984) (citations omitted). Further, the ALJ has the benefit of directly observing a claimant's demeanor and other indicia of credibility, which thus entitles the ALJ's credibility assessment to deference. See Tejada v. Apfel, 167 F.3d 770, 776 (2d Cir.1999) (citing Pascariello v. Heckler, 621 F.Supp. 1032, 1036 (S.D.N.Y.1985)); see also Snell v. Apfel, 177 F.3d 128, 135 (2d Cir.1999).

In the present case, the ALJ noted that Plaintiff's claim that she could not work due to sharp, throbbing back and neck pain (T at 265) was inconsistent with the objective medical evidence, which revealed mild clinical findings and relatively modest treatment. Further, the Plaintiff's testimony concerning her activities of daily living, which involved cooking, housework, and shopping also indicated that her complaints of disabling pain were less than fully credible. (T at 266). Lastly, as discussed above, Plaintiff's treating back specialist recommended vocational training and the treatment notes indicated that Plaintiff was "agreeable" with this recommendation. (T at 134). This casts further doubt upon Plaintiff's claims of disabling pain.

In sum, the Court finds the ALJ properly considered Plaintiff's pain and reported limitations, along with the medical and other evidence in the record, and further finds the

totality of evidence does not substantiate Plaintiff's claim that her pain and other symptoms were disabling. Accordingly, the ALJ exercised his discretion to evaluate the credibility of Plaintiff's testimony, presented a fair summary of his evaluation, and rendered an independent judgment regarding the extent of Plaintiff's subjective complaints based on the objective medical and other evidence. See e.g. Mimms v. Sec'y of Health and Human Servs., 750 F.2d 180, 196 (2d Cir.1984).  The ALJ's decision should therefore be upheld.

### e.    Failure to Consult a Vocational Expert

At step 5 in the sequential evaluation, the ALJ was required to perform a two part process to first assess Plaintiff's job qualifications by considering her physical ability, age, education, and work experience, and then determine whether jobs exist in the national economy that Plaintiff could perform. See 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1520(f); Heckler v. Campbell, 461 U.S. 458, 460, 103 S.Ct. 1952, 1954, 76 L.Ed.2d 66 (1983). In this, and other social security cases, the second part of this process is generally satisfied by referring to the applicable rule of the Medical-Vocational Guidelines set forth at 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly called "the Grids" or the "Grid"). See Bapp v. Bowen, 802 F.2d 601, 604 (2d Cir.1986).

The function of the Grids was succinctly summarized by the court in Zorilla v. Chater, 915 F.Supp. 662, 667 (S.D.N.Y.1996) as follows:

> In meeting [his] burden of proof on the fifth step of the sequential evaluation process described above, the Commissioner, under appropriate circumstances, may rely on the medical-vocational guidelines contained in 20 C.F.R. Part 404, Subpart P, App. 2, commonly referred to as "the Grid." The Grid takes into account the claimant's residual functional capacity in conjunction with the claimant's age, education and work experience. Based on these factors, the Grid indicates whether the claimant can engage in any other substantial gainful work which exists in the national economy. Generally the result listed in the Grid is dispositive on the issue of disability.

19

Id.

"The Grid classifies work into five categories based on the exertional requirements of the different jobs. Specifically, it divides work into sedentary, light, medium, heavy and very heavy, based on the extent of requirements in the primary strength activities of sitting, standing, walking, lifting, carrying, pushing, and pulling."  Id. at 667 n. 2; see 20 C.F.R. § 404.1567(a). Upon consideration of the claimant's residual functional capacity, age, education, and prior work experience, the Grid yields a decision of "disabled" or "not disabled." 20 C.F.R. § 404.1569, § 404 Subpt. P, App. 2, 200.00(a).

If a claimant's work capacity is significantly diminished by non-exertional impairments beyond that caused by his or her exertional impairment(s), then the use of the Grids may be an inappropriate method of determining a claimant's residual functional capacity and the ALJ may be required to consult a vocational expert. See Pratts v. Chater, 94 F.3d 34, 39 (2d Cir.1996); Bapp v. Bowen, 802 F.2d 601, 604-605 (2d Cir.1986).

In the present case, the ALJ noted that if the Plaintiff had the residual functional capacity to perform the full range of light work, a finding a "not disabled" would be mandated by Medical-Vocational Rule 202.17. (T at 32).  The ALJ then considered the effect of Plaintiff's additional limitations (*e.g.* only occasional stooping, crouching, crawling, rapid neck movement) on the occupational base of unskilled light work.  The ALJ concluded that the additional limitations had "little or no effect" on Plaintiff's occupational base. (T at 32).  For the above-stated reasons, the Court finds that the ALJ's determination in this regard was supported by substantial evidence and his reliance on the Grids was therefore appropriate and in accordance with applicable law.

**f.     Failure to Establish Whether Jobs Exists in Significant Numbers**

20

Plaintiff also argues that the ALJ failed to meet his burden of showing that a significant number of jobs exist in the national economy that Plaintiff can perform. However, the Regulations permit the ALJ to take administrative notice of the significant number of jobs available in the national economy involving sedentary and light work. 20 C.F.R. §§ 404.1566 (d), 416.966 (d).  These guidelines have been upheld as valid by the Supreme Court.  See Heckler v. Campbell, 461 U.S. 458, 468 (1983) ("To require the Secretary to relitigate the existence of jobs in the national economy at each hearing would hinder needlessly an already overburdened agency.").  Accordingly, because the ALJ concluded that Plaintiff was able to perform light work and, by implication, sedentary work, he was not required to relitigate the existence of jobs in the national economy that Plaintiff can perform – the existence of such jobs is presumed by operation of the applicable regulatory guidelines.

## IV. CONCLUSION

After carefully examining the administrative record, the Court finds substantial evidence supports the ALJ's decision, including the objective medical evidence and supported medical opinions. It is clear to the Court that the ALJ thoroughly examined the record, afforded appropriate weight to all the medical evidence, including Plaintiff's treating physicians, and afforded Plaintiff's subjective claims of pain and other limitations an appropriate weight when rendering his decision that Plaintiff is not disabled. The Court finds no reversible error.  Because the Court further finds that substantial evidence supports the ALJ's decision, it is respectfully recommended that Defendant's Motion for Judgment on the Pleadings be GRANTED, that Plaintiff's Motion for Judgment on the Pleadings be DENIED, and that the decision of the Commissioner be affirmed.

Respectfully submitted,

Victor E. Bianchini
United States Magistrate Judge

Dated:   May 17, 2009

Syracuse, New York


## V. ORDERS


Pursuant  to  28  USC  §636(b)(1),  it  is  hereby  ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within ten(10) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, as well as NDNY Local Rule 72.1(c).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME, OR TO REQUEST AN EXTENSION OF TIME TO FILE OBJECTIONS, WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT ORDER BY THE DISTRICT COURT ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.**

Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d. Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988); see also 28 U.S.C. §636(b)(1), Rules 6(a), 6(e) and 72(b) of the Federal Rules of Civil Procedure, and NDNY Local Rule 72.1(c).

Please also note that the District Court, on *de novo* review, will ordinarily refuse to consider arguments, case law and/or evidentiary material *which could have been, but were not*, presented to the Magistrate Judge in the first instance. See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

SO ORDERED.

May 17 , 2009

Victor E. Bianchini
United States Magistrate Judge

23